[No. 25042-6-I.   Division One.   July 29, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. LEON
DALE BILLUPS, *Appellant.*

*Philip Lynch* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Craig Peterson, Deputy,* for respondent.

BAKER, J. — Leon Dale Billups appeals his conviction on two counts of attempted kidnapping in the second degree. We affirm.

At approximately 1 p.m. on July 7, 1989, two girls, ages 10 and 11, were walking toward the Ballard locks, where they planned to picnic. As they approached the intersection of 58th and 32nd Streets, one of the girls noticed an orange Volkswagen van. The van stopped at the intersection as the girls prepared to cross the street in front of it. The driver of the van, Billups, leaned out of the window and said, "Hi girls. I'll pay you a dollar if you'll come down to Shilshole with me." Frightened, the girls ran across the street to a nearby house where they were allowed to use the telephone to call one of their mothers. The incident was promptly reported to the police, who responded to the call and obtained a description of the vehicle and its driver from the two girls. The officers drove to Golden Gardens Park, located at the northern end of Shilshole Bay, where they found a vehicle matching the description given by the girls. Billups was sitting alone in the vehicle, and as one of the officers approached, he lay down on the floor of the vehicle in an apparent effort to avoid detection. After Billups exited the van, one of the officers noticed a small homemade knife taped to the driver's side door and a large hunting-type knife on the floor next to the passenger door.

After his arrest, Billups initially denied any contact with the girls. He later acknowledged that he had lied because he was scared, and that he had in fact spoken to the girls. He claimed he told the girls, "I'd give you a dollar if you tell me where Woodland Park is."

At trial, 11-year-old A.H. was permitted to testify over objection that in June 1989, she saw an orange Volkswagen van parked within one or two blocks of the incident herein. After she exited her school bus, the van pulled up and stopped near her. The driver stepped part of the way out of the van and began to ask her questions. He said,

" 'Hi. How are you?' . . . 'Where are you going and what are you doing?' " This alarmed her and she went directly home. Although A.H. was unable to identify Billups from a photo montage shortly after the incident, she was able to identify him as the driver of the van at trial.

## I
### SUFFICIENCY OF EVIDENCE

Billups first contends that the evidence is insufficient, arguing that it showed neither the requisite criminal intent nor that he made a substantial step toward the commission of the crime. He asserts that although the evidence may have shown an intent to entice the girls into the van, it fell short of showing an intent to abduct them.

The elements of kidnapping in the second degree are set forth in RCW 9A.40.030 as follows:

> (1) A person is guilty of kidnapping in the second degree if he intentionally abducts another person under circumstances not amounting to kidnapping in the first degree.

"Abduct" is defined in RCW 9A.40.010:

> (2) "Abduct" means to restrain a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force[.]

"Restrain" is also defined in RCW 9A.40.010:

> (1) "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him has not acquiesced.

The elements of criminal attempt are set forth in RCW 9A.28.020:

> (1) A person is guilty of an attempt to commit [a] crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime.

■■ The State bears the burden of proving each and every element of the crime charged beyond a reasonable doubt. *State v. Aver*, 109 Wn.2d 303, 310, 745 P.2d 479 (1987). The applicable standard of review is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*' " *Aver*, 109 Wn.2d at 310-11 (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). Criminal intent may be inferred from circumstantial evidence, *State v. Caliguri*, 99 Wn.2d 501, 506, 664 P.2d 466 (1983), or from conduct, where the intent is plainly indicated as a matter of logical probability. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

■■ Whether conduct constitutes a "substantial step" toward the commission of a crime is a question of fact. *State v. Workman*, 90 Wn.2d 443, 449, 584 P.2d 382 (1978). In *Workman*, the court adopted the Model Penal Code approach to the definition of a substantial step. "Under the code, conduct is not a substantial step 'unless it is strongly corroborative of the actor's criminal purpose.'" *Workman*, 90 Wn.2d at 451 (quoting Model Penal Code § 5.01(2) (Proposed Official Draft 1962)).[1] The Model Penal Code provides that "enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission" may constitute a substantial step toward the commission of an offense. *Workman*, 90 Wn.2d at 451 n.2 (quoting Model Penal Code § 5.01(2)(b)).

Based upon these principles, we hold that the trier of fact could properly have found Billups' actions sufficient to demonstrate both that he took a substantial step toward the commission of second degree kidnapping and that he had an intent to abduct. By offering the girls a dollar if they would go to Shilshole with him, Billups sought to entice the girls into his van. If the girls had

---

[1] Our Supreme Court recently reaffirmed its reliance on these principles in *State v. Smith*, 115 Wn.2d 775, 782, 801 P.2d 975 (1990).

complied, their movements would have been restrained by their presence in the van, and the restraint would have been "without consent" as they were both under age 16 and no parental consent had been given. *See* RCW 9A.40.010. Once they were restrained in the van, Billups would have been secreting or holding the girls in a place where they were not likely to be found. *See* RCW 9A.40.010(2). Thus, Billups' efforts to entice them into the van constituted a substantial step.[2]

Furthermore, Billups' conduct was strongly corroborative of a criminal intent to kidnap the girls. He suggested a location a child might find appealing, he offered the girls a bribe to accompany him there, and when the police arrived, he attempted to avoid detection. This conduct plainly indicates the requisite criminal intent as a matter of logical probability. Viewing the evidence in a light most favorable to the prosecution, therefore, a rational trier of fact could have found the essential elements of attempted second degree kidnapping beyond a reasonable doubt.

## II
### Overbreadth

Billups next contends that the criminal attempt statute and the second degree kidnapping statute cannot be construed so as to criminalize his conduct without rendering the statutes unconstitutionally overbroad. He argues that such a construction would criminalize the act of any adult

---

[2]Billups' attempts to characterize his words as "mere solicitation", and thus not constituting a substantial step, must be rejected. Solicitation, in that context, refers to asking someone to commit a crime. *See State v. Gay*, 4 Wn. App. 834, 840, 486 P.2d 341, *review denied*, 79 Wn.2d 1006 (1971). Luring an intended victim with an offer of money is not "solicitation" in that sense of the word. In the attempted rape and assault case Billups relies on, *State v. Hinz*, 22 Wn. App. 906, 915, 594 P.2d 1350 (1979), *aff'd*, 93 Wn.2d 510, 610 P.2d 1322 (1980), the jury was instructed that " 'substantial step' means more than mere preparation or solicitation." *Hinz*, 22 Wn. App. at 909. However, the only issue relevant to that instruction discussed on appeal concerned whether the instruction should also have included an admonition that the substantial step must be strongly corroborative of the actor's criminal intent. The case does not stand for the proposition urged by Billups. It did not appear to be Hinz's theory therein that his approach of the victim was mere "solicitation".

offering a ride to a juvenile, regardless of the adult's lack of criminal intent. We disagree.

■ ■ Our Supreme Court recently outlined the overbreadth doctrine in *Seattle v. Webster*, 115 Wn.2d 635, 802 P.2d 1333 (1990), *cert. denied*, 111 S. Ct. 1690 (1991):

> A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is "substantially overbroad." In determining overbreadth, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Criminal statutes require particular scrutiny and may be facially invalid if they "make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application."

*Webster*, 115 Wn.2d at 641 (quoting *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989)).

The *Webster* court went on to hold that language requiring a specific criminal intent saved a criminal ordinance from unconstitutional overbreadth. *Webster*, 115 Wn.2d at 642. Billups' overbreadth challenge must similarly fail. RCW 9A.40.030 requires that a person act with intent to abduct. This criminal intent element sufficiently narrows the scope of the challenged statutes so as to save them from claims of unconstitutional overbreadth.

### III
#### VAGUENESS

Billups next argues that a person of ordinary intelligence would not reasonably conclude that a nonthreatening verbal attempt to get two children inside a vehicle is an act that goes beyond mere solicitation. Therefore, he asserts, the term "substantial step" in the criminal attempt statute, as applied herein, is unconstitutionally vague. Again, we disagree.

■ The "void for vagueness" doctrine was recently set forth in *Seattle v. Huff*, 111 Wn.2d 923, 928-29, 767 P.2d 572 (1989), *quoted in Seattle v. Webster*, 115 Wn.2d at 643:

Under this analysis, the factual setting of this case is irrelevant and we look only to whether " '. . . any conviction under the statute could be constitutionally upheld.' " An ordinance is presumed constitutional and the party challenging the constitutionality of the law has the burden of proving it is unconstitutionally vague beyond a reasonable doubt. This presumption "should be overcome only in exceptional cases." When a legislative enactment is challenged on vagueness grounds, the issue is whether the two requirements of procedural due process are met: adequate notice to citizens and adequate standards to prevent arbitrary enforcement. Strict specificity is not required; the exact point where actions cross the line into prohibited conduct need not be predicted. " '[I]f [persons] of ordinary intelligence can understand a penal statute *notwithstanding some possible areas of disagreement*, it is not wanting in certainty.' " A statute is not unconstitutional "if the general area of conduct against which it is directed is made plain." The language of a challenged statute will not be looked at in a vacuum, rather, the context of the entire statute is considered.

■ In *State v. Cozza*, 19 Wn. App. 623, 576 P.2d 1336 (1978), we held that the term "substantial step" was not unconstitutionally vague, but clearly advised the public that mere preparation to commit a crime is not a criminal offense. *Cozza*, 19 Wn. App. at 626. As we have held, Billups' attempt to entice the girls into his van was a substantial step. Billups' contention that a person of ordinary intelligence would not understand the term to include "mere non-threatening words" must be rejected, since under these circumstances the words *were* threatening. They were an attempt to entice young children into a stranger's vehicle without the consent of their parents, which is plainly the area of conduct against which the statute is directed. *See* RCW 9A.40.010(1), (2).

## IV

### TESTIMONY OF A.H.

Finally, Billups contends that the testimony of A.H. was inadmissible on the issue of intent, and that the trial court erred in admitting the evidence without determin-

ing whether its probative value outweighed its prejudicial effect.

■ ER 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that the person acted in conformity therewith, but may be admissible for other purposes, including intent or absence of mistake. The trial court's determination to admit such evidence is reviewed under an abuse of discretion standard. *State v. Lynch*, 58 Wn. App. 83, 87, 792 P.2d 167, *review denied*, 115 Wn.2d 1020 (1990).

The trial court must first consider the relevance of the evidence; then it must balance, on the record, the probative value of the evidence against its prejudicial effect. *State v. Jackson*, 102 Wn.2d 689, 693-94, 689 P.2d 76 (1984); *Lynch*, 58 Wn. App. at 87-88. In determining relevancy, the court must decide if the identified fact for which the evidence is admitted is of consequence to the outcome of the action and if the evidence tends to make the fact more or less probable. *State v. Saltarelli*, 98 Wn.2d 358, 362-63, 655 P.2d 697 (1982); *see* ER 401.

When considering misconduct which is not criminal in nature, extreme caution must be used to avoid prejudice. *State v. Myers*, 49 Wn. App. 243, 247, 742 P.2d 180 (1987). Where the decision as to prejudice is close, the scale must tip in favor of exclusion. *See Myers*, 49 Wn. App. at 247.

Here, the evidence was offered for the purpose of showing intent. Intent was a material issue. Billups not only denied making the alleged comments to the two victims from which intent could be inferred, but also argued that the alleged comments did not demonstrate criminal intent to abduct, even if they were made.

However, the proffered evidence was not probative of the intent issue. The statements Billups allegedly made to A.H. did not display a criminal intent to abduct girls in this neighborhood. The words merely suggested an inordinately friendly greeting. They lacked any demonstration

of criminal propensity, unlike Billups' later statements to the two victims herein. Thus, the trial court erred in admitting the testimony.

We must next determine whether the error was harmless. Improper admission of evidence under ER 404(b) is harmless unless, within reasonable probabilities, the outcome of the trial would have been different had the error not occurred. *Jackson*, 102 Wn.2d at 695.

Billups' case was tried to the bench, so we are able to examine the reasoning of the factfinder. The trial court made no reference to the improper testimony in its written findings or in its oral ruling. It evidently did not rely on A.H.'s testimony in reaching its decision that the remaining evidence was sufficient to convict Billups. We therefore hold that the admission of A.H.'s testimony was harmless error.

Affirmed.

AGID, J., concurs.

SCHOLFIELD, J. (dissenting) — I respectfully dissent. There is no basis in the evidence to support a finding as to Billups' purpose in speaking to the two girls. It follows that there is a lack of evidence to support the conclusion reached in the majority opinion that he intended to kidnap them. In so concluding, the opinion does not address adequately and realistically the statutory requirements for an attempted kidnapping in the second degree.

The crime of kidnapping in the second degree is defined as follows:

(1) A person is guilty of kidnapping in the second degree if he intentionally abducts another person under circumstances not amounting to kidnapping in the first degree.

RCW 9A.40.030(1).

A key element of kidnapping in the second degree is intentional abduction. The word "abduct" is defined in RCW 9A.40.010 as follows:

(2) "Abduct" means to restrain a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force;

The word "restrain" is also defined in RCW 9A.40.010:

(1) "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him has not acquiesced.

Criminal attempt is defined in RCW 9A.28.020 as follows:

(1) A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime.

An intent to abduct is a specific intent. RCW 9A.28.020, in defining a criminal intent, requires that the substantial step be taken "with intent to commit a specific crime". The specific crime involved here is kidnapping, and the required intent is the intent to abduct. While a finding of a specific intent can be inferred, it can only be inferred from "conduct where it is plainly indicated as a matter of logical probability." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Billups' conduct of inviting the girls to get into his van does not plainly indicate any specific intent. While one may be suspicious of his motives, the suspicion is only general. His purpose is unknown, and if he had a specific intent, it is also unknown. One must engage in one supposition after another in order to reach the conclusion that he had an intent to restrain the girls by secreting or holding them in a place where they were not likely to be found.

Billups' purpose in inviting the girls into his van could have been innocent, in the sense that no criminal act was contemplated. If a criminal intent was present, it could

have been other than an intent to kidnap. A fact pattern of this general nature does not meet the requirements for permissive inferences.

A permissive inference is valid when there is a "rational connection" between the proven fact and the inferred fact, and the inferred fact flows "more likely than not" from the proven fact.

*State v. Ratliff*, 46 Wn. App. 325, 330-31, 730 P.2d 716 (1986), *review denied*, 108 Wn.2d 1002 (1987).

The evidence must support a finding of an intent to restrain the girls by secreting or holding them in a place where they were not likely to be found. There is no suggestion in the facts of this case of use or threatened use of deadly force. The State argues that Billups had two knives in the truck. However, there is no evidence he ever picked up one of the knives or that the girls ever saw the knives.

The convictions for attempted kidnapping must be reversed because the evidence does not support a finding of an intent to abduct. The evidence in this case goes no further than to show an effort by Billups to entice the girls into his van. He did nothing more than speak to them. As a result, they ran away. He did not pursue them.

The majority opinion reasons that if the girls had responded by getting into the van, their movements would have been restrained by their presence in the van. Mere presence in the vehicle does not amount to restraint. Had the girls elected to leave the van and been permitted to do so, there would be no restraint. There would be no restriction of movement and no acquiescence under RCW 9A.40.010(1)(b). There is no evidence that upon request the girls would not have been permitted to leave the van. Pure supposition is needed to support the conclusion that once they were in the van, their movements would have been restrained.

The majority opinion then states that once restraint is shown, the element of secreting or holding the girls in a place where they are not likely to be found has also been

satisfied. Additional facts are necessary to satisfy this element. However, in this case, no additional facts are present because the girls never entered the van. Even had the girls entered the van and been driven to Shilshole Bay, it would be very doubtful that this could be held to be an attempt to hold them in a place where they were not likely to be found. All of the activity involved would have occurred on public streets and at public places in the middle of a July day.

If we assume for the sake of discussion that had the girls entered the van they would have been restrained in the van for some unknown period of time, the element of intent to abduct would still be missing. Unlawful imprisonment is an entirely separate offense from kidnapping. It requires nothing more than knowingly restraining another person. RCW 9A.40.040. If we construe Billups' invitation to the girls as an attempted unlawful imprisonment, the evidence to support a finding of intent to abduct would still be lacking.

In the findings of fact entered by the trial court, there are no findings relative to the critical issue of intent to abduct. Conclusion of law 3 entered by the trial court states in part:

> The words in conjunction with the surrounding circumstances constitute a substantial step toward the commission of kidnapping in the second degree.

Nothing in the findings or in this conclusion of law provides a basis for finding an intent to abduct. The State's evidence is insufficient to sustain a conviction for attempted kidnapping in the second degree.

I would reverse and dismiss.